**BADR BOUCHNAFA, MARIA A. PEREZ**
**and ZIYAD BOUCHNAFA,**

        **Plaintiffs,**

**v.**                                  **Case No:  6:18-cv-527-Orl-31GJK**

**SECRETARY, UNITED STATES**
**DEPARTMENT OF HOMELAND**
**SECURITY and DIRECTOR,**
**CITIZENSHIP AND IMMIGRATION**
**SERVICES,**

        **Defendants.**

_____

## ORDER

This Matter comes before the Court without a hearing on the Plaintiffs' Motion for Summary Judgment (Doc. 17) and the Defendants' Response and Cross-Motion for Summary Judgment (Doc. 20).

### I.      Background

Plaintiff Badr[1] Bouchnafa, a Moroccan native and naturalized citizen of the United States, is the biological brother of Plaintiff Ziyad Bouchnafa and is married to Plaintiff Maria Perez. Badr and Maria adopted Ziyad when he was fifteen years old; the adoption was finalized on November 22, 2013. Doc. 17 at 2.

After adopting Ziyad, Badr filed a Petition for Alien Relative, or Form I-130, in order "to classify Ziyad as an 'immediate relative' in accordance with 8 U.S.C. § 1101[ ] as the minor child

---

[1] For brevity and to avoid confusion between Plaintiffs who share a last name, the Court uses the Plaintiffs' first names to identify them.

of a citizen of the United States." Doc. 17 at 1. An Application to Register Permanent Residence or Adjust Status, or Form I-485, which sought "to adjust Plaintiff Ziyad's status to that of an alien lawfully admitted for permanent residence," was filed simultaneously. *Id.* United States Citizenship and Immigration Services ("USCIS") later issued a Request for Evidence, related to the Form I-485, on November 21, 2016, asking Ziyad to complete and sign a Biographic Information Sheet (G-325A). Administrative Record, Doc. 22, at 29. Ziyad appears to have done this. Doc. 22 at 31-33.

In April of 2017, "USCIS issued a Decision denying the Form I-130." Doc. 17 at 2. USCIS found that, in compliance with 8 U.S.C. § 1101(b)(1)(E)(i), Ziyad (1) was under the age of 16 when Badr and Maria adopted him and (2) had "resided with his adoptive parents 'for at least two years prior to the date of filing' the Form I-130 and Form I-485." *Id.* (quoting USCIS decision, Doc. 1-4, at 2). Nevertheless, USCIS found "that the adoption order was 'not obtained for immigration purposes,' and denied the Form I-130 based on Badr's apparent failure "to establish that Plaintiff Ziyad met the definition of a 'child' for immigration purposes pursuant to 8 U.S.C. § 1101(b)(1)(E)." *Id.* (quoting USCIS decision (Doc. 1-4) at 2). Because the application for the Form I-485 was grounded on the approval of the Form I-130, USCIS also denied the Form I-485. *Id.* USCIS denied the Plaintiffs' motion to reopen the decision denying the Form I-130, concluding that the "Plaintiffs had failed to provide any additional evidence to support their applications." *Id.*

## I.    Legal Standards

Summary judgment is granted when the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a). The evidence is to be viewed in the light most favorable to the non-moving party. *Augusta Iron and Steel Works, Inc. v. Employers Ins. v. Wausau*, 835 F.2d 855, 856 (11th Cir.1988). "However, even

in the context of summary judgment, an agency action is entitled to great deference." *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th 1996). And, in visa petition proceedings, the burden of proof to establish eligibility for benefits rests upon the petitioner. *Matter of Brantigan*, 11 I & N Dec. 493, 495 (BIA 1966).

Under the Administrative Procedures Act, a court shall set aside an agency's action where it is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard requires the court to consider whether an agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Sierra Club v. Johnson*, 436 F.3d 1269, 1273–74 (11th Cir. 2006) (internal quotation omitted). Additionally, the Court must consider whether the agency has "articulate[d] a satisfactory explanation for [its] action including a rational connection between the facts found and the choice made." *Shays v. Federal Election Com'n*, 414 F.3d 76, 97 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The reviewing court is not to "conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Cobb's History*, 87 F.3d at 1246. Rather, the court will "decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.* (internal quotation omitted). In *Judulang v. Holder*, 565 U.S. 42, 63 (2011), an opinion considering the arbitrary and capricious nature of a Board of Immigration Appeals decision, Justice Kagan wrote, "[w]e must reverse an agency policy when we cannot discern a reason for it." It logically follows that reasons offered for agency policy must have some apparent legitimacy.

## II.    Analysis

The government cites *Matter of Cuello*, 20 I&N Dec. 94 (BIA 1989), for the proposition that "[a]doptive relationships must be evaluated based on Congress's intent to recognize only bona fide adoptive relationships." However, *Cuello* states that

> where a petitioner establishes compliance with the age and legal custody requirements of section 101(b)(1)(E) of the Act, and the statute's residence requirement by, where necessary, demonstrating primary parental control during the parties' residence with one another, the relationship will be presumed bona fide in the absence of evidence indicating otherwise.

*Id.* at 98. *Cuello* involved a situation in which primary parental control was in dispute. Here, there is no indication that is the case. There is no dispute, according to the USCIS, that Badr and Ziyad met the two-year legal custody requirement. Doc. 1-4 at 3.

Despite finding that Ziyad had resided in Badr's and Maria's custody for two years prior to the filing of the I-130, USCIS denied Badr's Form I-130 because "the evidence [he] provided does not support a finding that the adoption was not obtained for immigration purposes." Doc. 1-4 at 2-3. The Defendants claim that Ziyad's "adoption bears all the earmarks of an adoption for immigration purposes to obtain Ziyad's entry to the United States and circumvent immigration laws." Doc. 20 at 7-8. The USCIS Denial Notice and the Government's Response and Motion for Summary Judgment spend no time explaining any rational connection between the facts found and the choice made. And, even paying great deference to the agency's decision, the Court is unable to find such a rational connection. Both the USCIS and the Defendants summarize facts that the Government apparently finds persuasive. However, for an inference to have persuasive value, it must preclude an opposite inference that is just as reasonable. A summary of the reasons USCIS offers for its denial of the I-130 follows.

First, USCIS makes much of the fact that Badr is the biological brother of Ziyad. USCIS and the Defendants also point out that the parents of Badr and Ziyad had traveled to the US fourteen years prior to their 2013 trip in order to facilitate the adoption of Badr by his uncle. Doc. 20 at 8; Doc. 1-4 at 3. It is unclear why the fact that the adoption of the child was by a blood relative would cast any suspicion on the genuineness of that adoption. And, the fact that Badr was also placed for adoption does not support the agency's decision; it makes sense that a family who placed one biological child for adoption in order to give him a better life would do the same for another biological child. Neither the USCIS nor the Defendants give an explanation as to why this is suspicious.

USCIS also seems to take issue with the birth mother's statement that Badr and Maria's trip to Morocco was to find a child to adopt, while Badr and Maria stated that it was to visit biological family. Doc. 1-4 at 3. Those reasons appear compatible, and indeed, Badr and Maria apparently did do both of those things during their trip to Morocco. Further, according to the United States, "Badr and Maria went to Morocco seeking a child to adopt." Doc. 20 at 7. If the Government believes the adoption of a child was the reason for the trip, and Badr and Maria did find a child to adopt, that seems to indicate this was a bona fide adoption. It is unclear how or why that could indicate the adoption was a sham, and neither the USCIS nor the Government make any effort to legitimize that inference.

The Denial Notice mentions that Badr and Maria both stated that the living conditions of Badr's biological family shocked them. Doc. 1-4 at 3. USCIS skeptically notes that "finances were good enough for international travel," due to visas issued to Badr and Ziyad's birth parents, and it lists the jobs of the birth parents without explaining why those jobs might immunize them against financial difficulties. According to USCIS, there is a "discrepancy" between the fact that the birth

parents had jobs and could travel internationally and Badr and Maria's sworn statements that they decided they would provide a better life for Ziyad. It appears that the visitor visas referenced by USCIS are the ones that allowed them to come to the United States to give their youngest son up for adoption. To the extent there is a discrepancy, there is no apparent rational connection between that discrepancy and the agency's decision to deny the petition.

Finally, USCIS noted that all the paperwork for the adoption was done immediately upon Ziyad's arrival in the United States, and that shortly thereafter, Ziyad was enrolled in school. USCIS refers to this as a "quick turnaround" that "indicates the adoption was obtained for immigration purposes." Doc. 1-4 at 4. This inference strains credulity. The Court is skeptical that a motivation on the part of adoptive parents to process the adoption of their new child quickly is atypical or suspicious. The Court is unable to discern a legitimate reason for the denial of the I-130 from the USCIS Denial Notice and the Administrative Record and therefore concludes that the agency's action was arbitrary and capricious. Accordingly, the Plaintiffs are entitled to summary judgment.[2]

### III.    Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment (Doc. 17) is **GRANTED**. The Government's Motion for Summary Judgment (Doc. 20) is **DENIED**. The Court will set a hearing in the near future to determine the appropriate relief.

---

[2] Because the Court finds that the Plaintiffs are entitled to summary judgment on this issue, it does not address the Plaintiffs' procedural due process claim.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 7, 2019.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party